UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                         Case No. 23-CR-8-PP-SCD

KEVIN McCAA,

    Defendant.

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS COUNT FOUR

In December 2022, a United States postal carrier was shot and killed while delivering mail in Milwaukee. Looking for evidence related to the homicide, law enforcement searched two residences linked to Kevin McCaa and found multiple rounds of ammunition. Federal law prohibits McCaa from possessing ammunition because he was previously convicted of several crimes punishable by more than a year in prison (usually felonies), including possession of marijuana as a second or subsequent offense and fleeing or eluding an officer. A federal grand jury charged McCaa with unlawful possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

McCaa has moved to dismiss the felon-in-possession charge, arguing that § 922(g)(1) is unconstitutional in light of *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Although the Constitution presumptively protects McCaa's conduct, the government has met its burden of demonstrating that § 922(g)(1) is consistent with the United States' historical tradition of firearm regulation. Because § 922(g)(1) is constitutional under *Bruen*, I will recommend that McCaa's motion be denied.

## LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Certain motions, including ones alleging that an indictment fails to state an offense, must be made before trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). One way an indictment fails to state an offense is if "the charged offense is based on an unconstitutional statute." *United States v. Holden*, 638 F. Supp. 3d 931, 935 (N.D. Ind. 2022) (citing *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973); *United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019)), *rev'd on other grounds* 70 F.4th 1015 (7th Cir. 2023).

McCaa brings both a facial and an as-applied challenge to § 922(g)(1). "To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications." *United States v. Posey*, No. 2:22-CR-83 JD, 2023 WL 1869095, 2023 U.S. Dist. LEXIS 22005, at *2 (N.D. Ind. Feb. 9, 2023) (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 415, 418 (2015)). In contrast, an as-applied challenge requires the moving party to show that the statute "is unconstitutional because the way it was applied to the particular facts of their case." *Id.* (citing *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011)).

## DISCUSSION

McCaa contends that § 922(g)(1) unconstitutionally infringes upon his fundamental right to possess ammunition, in violation of the Second Amendment. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "In *District of Columbia v. Heller*, . . . , the Supreme Court concluded, after thorough

textual and historical analysis, that the Second Amendment confers 'an individual right to keep and bear arms.'" *United States v. Daniels*, 610 F. Supp. 3d 892, 892–93 (S.D. Miss. 2022) (quoting *Heller*, 554 U.S. 545, 595 (2008)), *rev'd on other grounds*, 77 F.4th 337 (5th Cir. 2023). "[T]he Supreme Court identified the 'core' of the Second Amendment as 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) (quoting *Heller*, 554 U.S. at 634–35).

The Supreme Court also made clear, however, that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Although the Court did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it emphasized that its opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27. The Court explained in a footnote that its list of "presumptively lawful regulatory measures" was not exhaustive. *Id.* at 627 n.26. Two years later, the Court "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 561 U.S. 742, 749–50, 786 (2010), a case finding that the Second Amendment right to keep and bear arms for the purpose of self-defense is fully applicable to the states via the Due Process Clause of the Fourteenth Amendment.

The Supreme Court revisited the scope of the Second Amendment right to keep and bear arms in *Bruen*. Building on its prior holdings in *Heller* and *McDonald*, the Court held that the Second Amendment also protects "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122. The Court also "clarified and explained the methodology to be used in addressing Second Amendment claims." *Daniels*, 610 F. Supp. 3d

3

at 893. The Court noted that, after *Heller* and *McDonald*, many appellate courts—including the Seventh Circuit—adopted the same two-step test for evaluating the constitutionality of firearm restrictions. *See Bruen*, 142 S. Ct. at 2125–27; *see also Kanter*, 919 F.3d at 441–42. "At the first step, the government [could] justify its regulation by 'establish[ing] that the challenged law regulate[d] activity falling outside the scope of the right [to keep and bear arms] as originally understood.'" *Bruen*, 142 S. Ct. at 2126 (quoting *Kanter*, 919 F.3d at 441). "At the second step, courts often analyze[d] 'how close the law [came] to the core of the Second Amendment right and the severity of the law's burden on [that] right.'" *Ibid.*

The Supreme Court rejected the two-step approach used by the appellate courts as "one step too many." *Bruen*, 142 S. Ct. at 2127. The Court determined that the first step was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* However, according to the Court, "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* The Court articulated the proper standard for applying the Second Amendment to modern firearm regulations: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

McCaa maintains that the felon-in-possession charge must be dismissed because § 922(g)(1) is unconstitutional under the *Bruen* framework. *See* Def.'s Mot., ECF No. 56; Def.'s Reply, ECF No. 63. The government asserts that the Second Amendment's plain text

4

does not cover the possession of ammunition by convicted felons and, even if it did, prohibiting felons from possessing ammunition is consistent with the nation's historical limitations on firearm acquisitions. *See* Govt.'s Resp. 2–32, ECF No. 61.

I.  **The Second Amendment's Plain Text Covers McCaa's Conduct**

The government argues that the Second Amendment's plain text does not cover McCaa's conduct because he is not among those citizens entitled to the amendment's protections. Govt.'s Resp. 11–13. The operative clause of the Second Amendment states that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. Const. amend. II. According to the government, the Supreme Court determined in *Heller* and *Bruen* that only law-abiding citizens are part of "the people" entitled to "keep and bear Arms." The government says that, because McCaa is not a law-abiding citizen—as evidenced by his state felony convictions—he falls outside the scope of the Second Amendment.

Whether "the people" for purposes of the Second Amendment includes only law-abiding citizens "is currently subject to a lively debate among federal jurists." *Posey*, 2023 U.S. Dist. LEXIS 22005, at *12 (citing *United States v. Black*, 649 F. Supp. 3d 246, 250–51 (W.D. La. 2023) (collecting cases)). Despite language seemingly linking Second Amendment rights to the concept of "law-abiding," "responsible," or "ordinary" citizens, the Supreme Court has not decided the issue. *See Atkinson v. Garland*, 70 F.4th 1018, 1023 (7th Cir. 2023) (noting that "*Bruen* left this complicated issue unresolved"). The Seventh Circuit has provided mixed signals. *See United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) (acknowledging that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry"); *United States v. Meza-Rodriguez*, 798 F.3d 664, 669–72 (7th Cir. 2015) (holding that "the Second Amendment protects unauthorized non-U.S. citizens

5

within our borders"); *Kanter*, 919 F.3d at 445–47 (expressly side-stepping the issue). And, post-*Bruen*, the other appellate courts have divided as well. *Compare Range v. Att'y Gen. of the United States*, 69 F.4th 96, 101–03 (3d Cir. 2023) (en banc) (rejecting the government's argument "that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment") *with United States v. Sitladeen*, 64 F.4th 978, 983–87 (8th Cir. 2023) (finding that *Bruen* did not disturb prior circuit precedent "that unlawful aliens are not part of 'the people' to whom the protections of the Second Amendment extend").

The answer to this debate likely won't change the outcome of any Second Amendment challenge, and it wouldn't in this case. As then-Judge Barrett recognized, the two approaches—(1) that certain groups, like felons, fall entirely outside the amendment's scope and (2) that all Americans have Second Amendment rights but that a historical tradition supports Congress's authority to strip certain groups of that right—"will typically yield the same result." *Kanter*, 919 F.3d at 451–53 (Barrett, J., dissenting). Thus, absent further guidance from the Supreme Court or the Seventh Circuit, I will assume that convicted felons are included among "the people" entitled to Second Amendment protections.

That preliminary issue aside, the plain text of the Second Amendment clearly covers McCaa's conduct. Section 922(g)(1) makes it unlawful "for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, . . . ammunition." Although the Second Amendment does not explicitly reference ammunition, the government does not dispute that the amendment covers possessing ammunition, and the Seventh Circuit "has recognized that corollaries to firearms fall within Second Amendment protection," *Bevis v. City of Naperville*, No. 23-1353, No. 23-1793, No. 23-1825, 2023 U.S. App. LEXIS 29332, at *67 (7th Cir. Nov.

6

3, 2023) (Brennan, J., dissenting) (citing *Wilson v. Cook County*, 937 F.3d 1028, 1032 (7th Cir. 2019)). The Constitution therefore presumptively protects McCaa's conduct.

## II. Section 922(g)(1) is Consistent with the Historical Tradition of Firearm Regulation in the United States

The parties agree that, to overcome the presumption that the Second Amendment protects McCaa's conduct, the government must demonstrate that the federal felon-in-possession statute "is consistent with the Nation's historical tradition of firearm regulation." Def.'s Mot. 3 (quoting *Bruen*, 142 S. Ct. at 2130); Govt.'s Resp. 6 (same). "The pertinent question . . . is what the Founders understood the Second Amendment to mean." *Atkinson*, 70 F.4th at 1020 (citing *Bruen*, 142 S. Ct. at 2136). "To carry its burden, the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2131–32), *cert. granted*, No. 22-915, 2023 WL 4278450, 2023 U.S. LEXIS 2830 (U.S. June 30, 2023).

According to the government, § 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. *See* Govt.'s Resp. 13–25. The government relies on three lines of authority to support its argument. First, the government asserts that, at the time of the founding, even non-violent felons were subjected to capital punishment, estate forfeiture, and "civil death" (i.e., the loss of civil rights). Second, the government points to various laws from England and colonial America aimed at disarming certain groups—like Catholics, Native Americans, Black people, and those who refused to swear loyalty to the new government—whom authorities believed could not be trusted to adhere to the rule of law. Third, the government cites unadopted ratification proposals that would have guaranteed the right to bear arms, except for those convicted of certain crimes or who posed a danger to

7

the new nation. The government argues that this historical record demonstrates that, at the time of the founding, legislatures had broad discretion to disarm classes of people who, like felons today, were perceived as an overall threat to the social order or to be dangerous.

McCaa contends that the government's proffered authority does not satisfy its burden at the second step of *Bruen*'s text-and-history test. He first criticizes the government for failing to demonstrate a longstanding tradition of permanently disarming non-violent felons. Def.'s Mot. 10–12. But *Bruen* requires the government to identify only "a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. Moreover, McCaa provides no historical evidence suggesting that the constitutionality of § 922(g)(1) turns on individualized assessments of violence. *See United States v. Jackson*, 69 F.4th 495, 504 (8th Cir. 2023) ("[H]istory demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."); *Atkinson*, 70 F.4th at 1023 (noting that the appellant failed to "provide much historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes"). Rather, the historical evidence supports broad legislative discretion to disarm entire *categories* of individuals. *See Jackson*, 69 F.4th at 502–04 (finding "no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)").

McCaa also criticizes the government for not citing any historical laws that prohibited felons from possessing firearms after they completed their sentence. *See* Def.'s Reply 3–4, 6–9. As support, he points to a passage in *Bruen* where the Supreme Court indicated that "when a challenged regulation addresses a general societal problem that has persisted since the 18th

8

century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131 (emphasis added). The Court went on to say that "other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. Here, both parties indicate that § 922(g)(1) targets a general societal problem that has existed since before the founding. *See* Def.'s Mot. 11; Def.'s Reply 4, 6, 8, 20; Govt.'s Resp. 25–26. And because the government is unable to point to any *distinctly similar* historical regulations, McCaa's argument goes, analogical reasoning does not apply, and the government has failed to carry its burden of demonstrating that § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation.

Although the parties seem to agree that the federal felon-in-possession statute addresses a persistent, general societal problem, they disagree on what that problem is. McCaa says the statute addresses crime and recidivism. Def.'s Mot. 11; Def.'s Reply 8, 20. It does, but I think that's overbroad. The government says the statute relates to the disarmament of individuals who are untrustworthy adherents to the rule of law. Govt.'s Resp. 25–26. That also may be true, but again, I don't think it sufficiently captures the specific societal problem Congress tried to curb in enacting § 922(g)(1). Thus, the question about what societal problem the statute targets remains unresolved. *See Atkinson*, 70 F.4th at 1023 (remanding a challenge to the constitutionality of § 922(g)(1) to answer several questions, including whether the statute addresses "a general societal problem that has persisted since the 18th century").

"To identify the problem Congress intended to address, 'we look to the text, structure, and purpose of the statute and the surrounding statutory framework.'" *Range*, 69 F.4th at 139 (Roth, J., dissenting) (quoting *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d

9

Cir. 2016)). Section 922(g)(1) makes it unlawful for any person who has been convicted of a crime punishable by more than a year in prison to "possess *in or affecting commerce*, any firearm or ammunition." The jurisdictional element was key—indeed, the first words of the Federal Firearms Act of 1938 (the earliest version of the current statute) were: "To regulate commerce in firearms." Federal Firearms Act, Pub. L. No. 75-785, 52 Stat. 1250 (1938). "Accordingly, the societal problem addressed by § 922(g)(1) is the possession of firearms *in interstate commerce* by particular 'channels of commerce'—those channels under the language of § 922(g)(1) being individuals with certain criminal convictions." *Range*, 69 F.4th at 140 (Roth, J., dissenting). The possession of firearms in interstate commerce was not a general societal problem that existed in the 18th century. Thus, to the extent the Supreme Court intended to articulate two separate tests for considering the government's historical evidence—one for longstanding societal problems ("distinctly similar") and the other for unprecedented societal problems ("relevantly similar")—the latter test applies here.

"[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 142 S. Ct. at 2132 (citing C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). Drawing from its previous decisions in *Heller* and *McDonald*, the Supreme Court in *Bruen* identified two metrics courts can use to "to compare the Government's proffered analogues against the challenged law: *how* the challenged law burdens the right to armed self-defense, and *why* the law burdens that right." *Rahimi*, 61 F.4th at 454 (citing *Bruen*, 142 S. Ct. at 2133). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry."

*Bruen*, 142 S. Ct. at 2133 (quoting *McDonald*, 561 U.S. at 767). Still, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id.*

While the Seventh Circuit has yet to decide a post-*Bruen* challenge to the constitutionality of § 922(g)(1), the Eighth Circuit recently rejected a challenge almost identical to McCaa's. Like McCaa, the defendant in *Jackson* argued that § 922(g)(1) was unconstitutional as applied to him "because his drug offenses were 'non-violent' and [did] not show that he [was] more dangerous than the typical law-abiding citizen." *Jackson*, 69 F.4th at 501. The court rejected that argument after considering much of the same historical evidence the government presents here. *See id.* at 502–05. The court determined "that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms." *Id.* at 505. Thus, "[w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *Id.*

The Third Circuit, sitting *en banc*, reached the opposite conclusion in *Range*. In a self-described "narrow" decision, the court held that § 922(g)(1) was unconstitutional as applied to an individual who was precluded from possessing a firearm based on a dated misdemeanor conviction for "making a false statement to obtain food stamps in violation of Pennsylvania law." *Range*, 69 F.4th at 98, 106. The court determined that the federal felon-in-possession statute was not "longstanding" enough to pass constitutional muster, as the current version of the statute was enacted in 1961. *Id.* at 103–04. The court also rejected the government's historical analogues, finding that founding-era status-based restrictions on distrusted groups

11

like Loyalists, Native Americans, Quakers, Catholics, and Blacks were not sufficiently analogous "to Range and his individual circumstances"; that the consequences faced by felons at the time of founding (e.g., capital punishment) did not evince a history and tradition of permanent disarmament; and that other historical disarmament laws differed from § 922(g)(1) in how they burdened the right to armed self-defense. *Id.* 104–05.

Like the Eighth Circuit in *Jackson*, I find that § 922(g)(1) is consistent with the nation's historical tradition of imposing broad, status-based firearm restrictions on categories of individuals who could not be trusted to obey the law or who were deemed dangerous. Those laws, like the federal felon-in-possession statute, disarmed specific groups in order to preserve social order. And while the burden faced by felons like McCaa may seem more severe at first glance, the prohibition on possessing a firearm or ammunition is not necessarily permanent. Convictions that have been expunged or set aside or for which a person has been pardoned or had civil rights restored do not result in any restriction on the right to keep and bear arms. *See* 18 U.S.C. § 921(a)(20). Likewise, although currently unfunded by Congress, the statute provides a mechanism to restore a convicted felon's gun rights. *See* 18 U.S.C. § 925. Section 922(g)(1) therefore may not a dead ringer for the government's proffered historical precursors, but it is still analogous enough to pass constitutional muster.

This conclusion is far from an outlier. Nearly every district court that has considered the constitutionality of § 922(g)(1) post-*Bruen* has found the statute comports with the Second Amendment. *See* Govt.'s Resp. 2 (asserting that only about 10 of approximately 400 decisions—2.5%—have found the statute unconstitutional). That near-unanimity includes both judges in this district who have considered the issue. *See United States v. Jackson*, No. 22-CR-254, 2023 WL 7284848, 2023 U.S. Dist. LEXIS 197650 (E.D. Wis. Nov. 3, 2023)

(Adelman, J.); *United States v. Watson*, No. 23-CR-109, 2023 WL 6623774, 2023 U.S. Dist. LEXIS 182631 (E.D. Wis. Oct. 11, 2023) (Griesbach, J.); *see also United States v. Denruyter*, No. 23-CR-155, 2023 WL 8098783, 2023 U.S. Dist. LEXIS 209398 (E.D. Wis. Oct. 17, 2023) (Joseph, J.), *adopted*, 2023 WL 8081658, 2023 U.S. Dist. LEXIS 208265 (E.D. Wis. Nov. 21, 2023) (Griesbach, J.).

\* \* \*

In sum, I find that § 922(g)(1) does not violate the Second Amendment as interpreted in *Heller*, *McDonald*, and *Bruen*. The plain text of the amendment covers McCaa's conduct. However, the government has satisfied its burden of demonstrating that § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation.

## CONCLUSION

For all the foregoing reasons, the court **RECOMMENDS** the district judge **DENY** the defendant's motion to dismiss count four, ECF No. 56. The court directs the parties' attention 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation. Objections must be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 8th day of December, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge